UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 25-cr-20393-CMA

UNITED STATES OF AMERICA, Miami, Florida

Plaintiff, January 5, 2026

v. 9:04 a.m. to 9:31 a.m.

DENNIS DOPICO, Courtroom 13-3

Defendant. (Pages 1 to 20)

---

SENTENCING
BEFORE THE HONORABLE CECILIA M. ALTONAGA,
CHIEF UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: NALINA SOMBUNTHAM, ESQ.
DAVID T. BERNHARDT, JR., ESQ.
MONA HAAR, ESQ.
Assistant United States Attorney
99 Northeast 4th Street,
Miami, FL 33132
(305) 961-9224
Nalina.Sombuntham@usdoj.gov
David.Bernhardt@usdoj.gov
Mona.Haar@usdoj.gov

FOR THE DEFENDANT: ROBERT N. PELIER, ESQ.
Law Office of Robert N. Pelier, P.A.
4649 Ponce de Leon Boulevard, Suite 301
Coral Gables, FL 33146-2118
(305) 529-9199
rpelier@pelierlaw.com

Also Present: Ashley Pittman, USPO
Cedric Chevalier, Fish and Wildlife
Special Agent

**APPEARANCES CONTINUED:**

**REPORTED BY:**

**STEPHANIE A. McCARN, RPR**
**Official Court Reporter**
**400 North Miami Avenue**
**13th Floor**
**Miami, Florida 33128**
**(305) 523-5518**
**Stephanie_McCarn@flsd.uscourts.gov**

# I N D E X

## WITNESSES

| WITNESSES FOR THE PLAINTIFF: | Page |
| --- | --- |
| | -- |

| WITNESSES FOR THE DEFENDANT: | Page |
| --- | --- |
| | -- |

| EXHIBITS IN EVIDENCE | IDENTIFIED | ADMITTED |
| --- | --- | --- |
| Plaintiff's Exhibit No. | -- | -- |
| Defendant's Exhibit No. | -- | -- |

## MISCELLANEOUS

| | Page |
| --- | --- |
| Proceedings.................................... | 4 |
| Court Reporter's Certificate...................... | 20 |

(The following proceedings were held at 09:04 a.m.)

THE COURT: United States and Dennis Dopico.

Do we have Defense here?

MS. SOMBUNTHAM: Your Honor, I think Defense counsel is in one of the outer rooms. I can double-check to see if his client has arrived yet.

THE COURT: Thank you.

(Pause in proceedings.)

THE COURT: United States and Dennis Dopico.

Counsel, please state your appearances.

MS. SOMBUNTHAM: Good morning, Your Honor. AUSA Nalina Sombuntham on behalf of the United States.

THE COURT: Please spell your last name.

MS. SOMBUNTHAM: S-O-M-B-U-N-T-H-A-M.

THE COURT: Thank you.

MS. SOMBUNTHAM: I am waiting for a co-counsel from the Antitrust Division. I believe they are downstairs making their way through the security as we speak. And I am joined at counsel's table by Fish and Wildlife Special Agent, Cedric Chevalier.

THE COURT: Good morning.

MR. CHEVALIER: Good morning, Your Honor.

THE COURT: For Defendant.

MR. PELIER: Good morning, Your Honor. May it please the Court, Robert Pelier on behalf of Dennis Dopico. He's

present.

Dennis, stand up, please.

THE COURT: Good morning.

Good morning, Mr. Dopico.

THE DEFENDANT: Good morning, Judge.

THE COURT: And from Probation?

MS. PITTMAN: Good morning, Your Honor. Ashley Pittman.

THE COURT: Is the microphone working? I don't think so.

MS. PITTMAN: Yes.

THE COURT: It is?

MS. PITTMAN: Yes.

THE COURT: Okay, very good. Thank you. Good morning.

Everyone, please be seated.

Is Mr. Bernhardt handling the arguments at sentencing or are you, Ms. Sombuntham?

MS. SOMBUNTHAM: We were expecting Mr. Bernhardt to be handling the argument at sentencing.

THE COURT: All right.

(Pause in proceedings.)

MR. BERNHARDT: Apologies for being late, Your Honor.

THE COURT: Good morning. Just state your appearances for the record, please.

MR. BERNHARDT: David Bernhardt.

THE COURT: Good morning.

MS. HAAR: Mona Haar.

THE COURT: Spell your last name, please.

MS. HAAR: H-A-A-R.

THE COURT: First name?

MS. HAAR: Mona, M-O-N-A.

THE COURT: Thank you.

MS. HAAR: Thank you.

THE COURT: All right. I'll hear from the Government.

MR. BERNHARDT: Thank you, Your Honor. We do not have -- there is no disagreement amongst the parties on the applicable guidelines. I'd just like to highlight a few points for Your Honor that are in our sentencing memoranda.

First, while Mr. Dopico is a -- he has pled and he has pled early, this is a very serious crime that has impacted a very important market in South Florida. It has -- this kind of conduct resonates with the economy. It impacts, by our account, at least 80 watermen, impacting their income, which trickles through to their families and how they then provide for the people that matter the most to them. So while Mr. Dopico's early pleading is notable, the conduct is very serious.

Second, on the point of the fine, the Government is still waiting on some financial documents from Mr. Dopico and

from Company 1 and we expect to get them imminently. It is just with the holidays and the Government shutdown, it was -- it's been challenging to get some of these things in the door.

And then finally, on the point of restitution, again, this is in our sentencing memorandum, but we are just now receiving data from the State of Florida's Fish and Wildlife Services. And we have provided that data to an in-house economist who is analyzing it now, and so we hope in the -- we hope to provide the Court with more concrete numbers for the Court to consider as it relates to restitution, if the Court wishes to order such. But restitution in antitrust cases are not mandatory.

Finally, the United States court -- the United States recommends the Court impose a sentence within the advisory guidelines ordering a eight months' imprisonment and a $200,000 fine.

THE COURT: So I saw your reference to the fine in your sentencing memorandum. Mr. Dopico is a defendant in one civil case pending before me, he as well as others. And the plaintiffs in -- in that action are obviously seeking quite a bit in -- in damages, which is, I assume what you would seek in restitution.

Mr. Dopico, I don't think can afford to pay a fine as well as restitution, if I impose both. Aren't we doing a disservice to the victims by having him pay a fine to the

**Government versus paying restitution in full or to the best of his and the others' ability to the victims?**

**MR. BERNHARDT: So there's two points there. First, Your Honor, restitution in an antitrust case, anything the Court were to order in this case would ultimately be subtracted off whatever damages were awarded in the civil context, so --**

**THE COURT: Right. We are not talking about restitution. I am talking about why impose a fine when the goal is to make the victims whole, or is the goal to give a fine to the Government?**

**MR. BERNHARDT: I think the Government's priority is making the victims whole.**

**THE COURT: All right. So if I impose a $200,000 fine, he is going to be paying the fine. What takes precedence, the fine or restitution?**

**Does Probation know when the payments are made?**

**MS. PITTMAN: I'm not sure, Your Honor, but normally the fine is payable immediately.**

**THE COURT: Immediately. Right.**

**MS. PITTMAN: Yes.**

**THE COURT: Right. So that's why I'm hesitant to agree with you on a $200,000 fine or any fine at all when what you really want -- I assume you're -- the reason for bringing the prosecution and your goal is to try to make these victims whole in some way.**

MR. BERNHARDT: Yes, Your Honor. The restitution is our priority. The civil case is not yet -- the civil case is not yet concluded.

THE COURT: No, I have the civil case. I have the first civil case. I know there is another judge having another civil case, but Mr. Dopico is my civil defendant and Mr. Pelier is his counsel in that case, right?

MR. PELIER: Yes, Your Honor.

THE COURT: Right.

MR. BERNHARDT: Your Honor, the fine would also go to Mr. Dopico personally and Mr. Dopico along with all the other named defendants in the civil case would be jointly inseparably liable for whatever damages were to incur. But the Government's position is restitution is the priority, whether that is here or in the civil context.

THE COURT: All right. And if we incarcerate Mr. Dopico, he really can't -- can be of very little assistance to his lawyer in this -- in advancing the civil case to a conclusion, correct?

MR. BERNHARDT: Yes, Your Honor. But we are asking for -- to defer remand until such a time which would -- until such a time the criminal -- Mr. Dopico has been able to cooperate with the criminal investigation, which would also allow him to further his cause in the civil case as well.

THE COURT: All right. So you are asking for a

surrender date of what?

MR. BERNHARDT: A hundred and twenty days from today, Your Honor.

THE COURT: All right. Thank you.

Mr. Pelier, I will hear from you now.

MR. PELIER: Yes, Your Honor. I'm somewhat confused as to the oral presentation as it pertains to restitution. Insofar as the context of the criminal case, the sentencing memo that was filed on Saturday morning suggests that the Government agrees with the Defendant's position that restitution based on the alleged amount of victims and the other attenuating circumstances would be best addressed in the civil context, which Your Honor has the other case.

THE COURT: Except that in the sentencing memorandum, there is a footnote that asks me to defer on restitution and set the matter for a restitution hearing. So I think in the very sentencing memorandum that you describe, the Government does say that, but at -- by the same token, is asking me to set this for a restitution hearing within the next 90 days because they have somebody working on the numbers as -- as Mr. Bernhardt mentioned.

MR. PELIER: Right. Judge, we believe that based on the arguments that we've asserted in our sentencing memorandum, that neither the plea agreement nor any of the understandings between the Government and the Defendant calls for restitution

as to this particular charge.

Certainly, I've included a footnote in my sentencing memo that the Court has the discretion to reject that and do as it pleases, and we recognize that. However, as it pertains to an antitrust violation, we believe that based on the sheer amount of alleged victims that it would be better served and addressed within the civil context, which I think is moving pretty briskly on the track towards trial.

THE COURT: It actually isn't. I think there is a motion to stay discovery, right?

MR. PELIER: Well, there is a motion to stay discovery --

THE COURT: -- until the Plaintiffs file their next complaint and sue whatever additional folks and companies they want to bring in.

MR. PELIER: Right. What I was suggesting was, Your Honor, that I understand that there's a deadline of January 14th to amend the pleadings and so that's what I was referring to.

THE COURT: I see. All right. So besides restitution, I'll hear your arguments. I know you've -- you've sought a downward departure for -- for Mr. Dopico.

MR. PELIER: I have, Your Honor. I have included some history and background of Mr. Dopico's, and as I state in my sentencing memo, not as an excuse but rather to provide the

Court a factual framework.

Really, Mr. Dopico's involvement in this particular industry stems from a familial involvement. It's all really what he knows. And the manner and method in which these particular prices were set in the industry were something that were just a matter of course and -- and really predated his involvement. And again, it's to provide the Court a framework regarding intentionality.

And as you might recall and as I've specified in my memorandum, I believe the Information was filed on September 10, 2025, and by the 16th of September, Mr. Dopico came before you almost immediately thereafter and accepted his responsibility.

And I can tell you that was, in whole, once he realized, once the Government explained and he understood that what he had been participating in was a violation of law. So that in addition to the, I'll say, 50-some-odd-years of living in this community, raising three children successfully, and all of the other attenuating factors that I've included in my memorandum, I believe provide the Court a -- a background or a backdrop against this particular, what I call, an aberration in conduct.

And so, as the Court knows, there are coconspirators that have not yet been charged. In light of the fact that this was a family-owned business and really not a major player in

this particular industry in what is otherwise a very small industry in the Upper Keys, Your Honor, we believe and we've argued that an intermediate role should be assessed by the Court and that there should be a downward departure in that regard.

We have also made the argument or the objection to the PSR as it pertains to restitution, which you've already heard my argument as to restitution. The balance of our argument contained in the memorandum really goes to the 3553(a) factors, which we have an accompanying variance that we are asking the Court to make a minor variance within Zone B.

I believe between Pages 11 -- or rather 13 through 19, we -- we set forth the guidelines, and we set forth the authority and the factors for the Court to make its either major variance or minor variance. It is our belief that since we are not asking in the context of the variance to reduce the total offense level of 10, but rather work within the range of options that the Court has. Namely, to sentence Mr. Dopico either to some non-incarcerative sentence which could include, as the Court knows, probation or community control or a combination thereof, coupled with whatever other conditions the Court deems appropriate.

I've set forth as a corollary to Mr. Dopico's acceptance of responsibility, his cooperation not only before accepting responsibility by and through a plea before Your

**Honor but afterwards. And that cooperation continues. And we anticipate it to continue up until whenever the Government determines that it has sufficient information to either conclude or move forward on its investigation.**

**So for those reasons, Your Honor, and I know that it was a -- it was a pretty lengthy sentencing memorandum. I don't want to bore the Court with repeating what we've already put in writing because I know that the Court customarily reads this in advance. So for those reasons, Your Honor, we are asking for a non-incarcerative sentence. We are asking the Court to either defer or reject the notion of restitution within these particular proceedings, i.e., the criminal proceedings, and everything else that we've requested in our written sentencing memorandum.**

**THE COURT: Thank you.**

**Did the Government wish to make any additional argument?**

**MR. BERNHARDT: Yes, Your Honor. Just to be clear on the issue of restitution, the Government is asking for a hearing to be set in 90 days so that we can provide the Court with additional information so that the Court, within its discretion, can make a decision as it relates to restitution. The economic analysis required just takes time.**

**We are -- our priority is the restitution for the watermen. Whether that is here in the civil context, it is**

**just important that this Court has additional numbers available to it so it can make an informed decision there. And that was included in -- restitution was an included term in the plea agreement. So that should not be a shock to anyone.**

**The Defendant -- under Paragraph 9, in addition, the Defendant understands, pursuant to the sentencing guidelines, the Court may order him to pay restitution to the victims of this offense.**

**The Government is unclear whether or not the -- the request by the Defense is a departure or a variance. But either way, it's unwarranted. There is an agreement on the total offense level of 10 in the -- in the plea agreement.**

**And then one final point as it relates to the notion that the Defendant didn't know what he was doing was wrong, legally, that's irrelevant in antitrust cases. The Defendant need only have known he was making an agreement in the restrain of trade, and he did that. Then the impacts, regardless of whether or not he knew it was wrong, resounded through that -- the fisherman's community in South Florida and that harm was very real.**

**THE COURT: Often in sentencing, there is a requirement in certain cases that a sentenced Defendant cooperate in removal proceedings. I'm sure the Government is aware of that. Perhaps not because you folks do antitrust and other matters.**

Is there the possibility of requiring the Defendant to cooperate in the pending civil cases or not? And by cooperate, I mean, as opposed to resisting entry of judgment or resisting a finding of liability, admit.

And so that's my thought, Mr. Pelier, as you represent Mr. Dopico in these civil cases, and there're going to be defensive motions filed.

MR. PELIER: Judge --

THE COURT: It is somewhat contradictory to admit culpability in the criminal matter while at the same time resisting a finding of liability. I am not saying in terms of monetary, the sum or the judgment eventual, if there is one, but in cooperating with Plaintiffs who are bringing these civil cases that arise from the criminal conduct that your client has admitted being involved in.

MR. PELIER: Judge, just to be clear. As you probably could tell from the motion practice wherein we requested additional time to secure other counsel, I am not lead counsel in this civil case. I am involved. However, I can't specifically answer the Court's questions regarding any types of defensive motions.

I do know, based on my experience and research, that this particular proceeding may be evidence of liability in those proceedings. And so, you know, our intention is to close this chapter in the criminal matter and then deal with the

civil matters in whatever way is appropriate.

THE COURT: Right. And I am wondering whether it is appropriate in a civil matter that raises civil violations of these laws, to make a requirement as part of the criminal sentence that your client cooperate as opposed to obfuscate. So that is just a thought. Because as I said before, I see the analogy in other -- in other instances where we, as part of our criminal judgement, require parties to cooperate in removal proceedings. I don't think either side here today is prepared to address that; am I correct?

MR. PELIER: That would be correct for the Defense.

MR. BERNHARDT: Your Honor, the Government would simply state that Mr. Dopico's cooperation agreement as contained within his plea agreement -- the cooperation provisions -- excuse me -- within his plea agreement, only relate to Government's criminal investigation.

THE COURT: I know. I know. But if the Government is truly interested in -- in the victims, then it would seek a resolution that incorporates some level of cooperation in these civil matters. The primary purpose of which is to obtain money damages on behalf of those victims.

So as neither side is prepared to address it, I am going to put off sentencing and have you all come back. And when you come back, I want you to tell me, do I have authority to do that? If so, what is the nature of any requirement as

part of a criminal judgment that would take that into account and make that part of the Defendant's obligation, or not.

You can say to me, No, you have no authority to do so. That would be an error of law. Or you can say, No, there is some room to do that and here's how you can do it. It could be a condition of probation, for example, particularly, when what the Defendant is requesting is a non-incarcerative sentence, right?

So he is requesting depart downward or very downward from the advisory guidelines. Don't incarcerate me. So then by the same token, what is it that he should be or can be ordered to do while on probation?

How much time do you all need to do that research and be prepared to address it?

And by then, I suppose, Mr. Pelier, your client may have new counsel in the civil case.

MR. PELIER: Well, no, Judge. To be clear, he already secured counsel, Mr. Bart Billbrough, who's lead counsel in this civil matter.

THE COURT: So he can consult with his civil attorney as well?

MR. PELIER: Sure.

THE COURT: All right. How is January 27? Give you all three weeks?

MR. BERNHARDT: Your Honor, I'm sorry. Would that be

for the hearing date or the date that the briefs were due?

THE COURT: I did not request a brief.

MR. BERNHARDT: Okay. Then the 27th would be fine with us, Your Honor.

MR. PELIER: One second, Your Honor.

THE COURT: Sure.

Is that good for Probation?

MS. PITTMAN: Yes, Your Honor.

THE COURT: Thank you.

MR. PELIER: Judge, it works for the Defense.

MR. BERNHARDT: Judge, if available, I would request an afternoon setting, if available.

THE COURT: I could give you noon?

MR. PELIER: That's fine, Judge.

THE COURT: All right. I have a 3 o'clock matter. Is noon on the 27th acceptable to the Government?

MR. BERNHARDT: Yes, Your Honor.

THE COURT: Very good. You all have a good day.

Nice to see you, Mr. Dopico.

MS. SOMBUNTHAM: Thank you, Your Honor.

THE COURT: Thank you.

(The proceedings adjourned at 9:31 a.m.)

**C E R T I F I C A T E**

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

_03/18/2026_
DATE

STEPHANIE A. McCARN, RPR
Official United States Court Reporter
400 North Miami Avenue,
13th Floor
Miami, Florida 33128
(305) 523-5518