UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 25-cr-20393-CMA

UNITED STATES OF AMERICA, Plaintiff,

v.

DENNIS DOPICO, Defendant.

Miami, Florida
January 29, 2026
9:38 a.m. to 10:21 a.m.
Courtroom 13-3
(Pages 1 to 27)

---

SENTENCING
BEFORE THE HONORABLE CECILIA M. ALTONAGA,
CHIEF UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:
DAVID T. BERNHARDT, JR., ESQ.
NALINA SOMBUNTHAM, ESQ.
MONA HAAR, ESQ.
HALEY M. PENNINGTON, ESQ.
Assistant United States Attorney
99 Northeast 4th Street,
Miami, FL 33132
(305) 961-9224
David.Bernhardt@usdoj.gov
Nalina.Sombuntham@usdoj.gov
Mona.Haar@usdoj.gov
Haley.Pennington@usdoj.gov

FOR THE DEFENDANT:
ROBERT N. PELIER, ESQ.
Law Office of Robert N. Pelier, P.A.
4649 Ponce de Leon Boulevard, Suite 301
Coral Gables, FL 33146-2118
(305) 529-9199
rpelier@pelierlaw.com

Also Present:
Ashley Pittman, USPO

APPEARANCES CONTINUED:

REPORTED BY: STEPHANIE A. McCARN, RPR
Official Court Reporter
400 North Miami Avenue
13th Floor
Miami, Florida 33128
(305) 523-5518
Stephanie_McCarn@flsd.uscourts.gov

# I N D E X

## WITNESSES


**WITNESSES FOR THE PLAINTIFF:** Page
--

**WITNESSES FOR THE DEFENDANT:** Page
--

| EXHIBITS IN EVIDENCE | IDENTIFIED | ADMITTED |
|---|---|---|
| Government's Exhibit No. | -- | -- |
| Defendant's Exhibit No. | -- | -- |


## MISCELLANEOUS


| | Page |
|---|---|
| Proceedings....................................... | 4 |
| Court Reporter's Certificate...................... | 27 |

(The following proceedings were held at 9:38 a.m.)

THE COURT: United States and Mr. Dopico.

(Pause in proceedings.)

THE COURT: Good morning. Please state your appearances.

MR. BERNHARDT: Good morning, Your Honor. David Bernhardt on behalf of the Government, joined by my colleagues Mona Haar, Haley Pennington --

THE COURT: I can barely hear you.

MR. BERNHARDT: Good morning, Your Honor. David Bernhardt on behalf of the Government, joined by my colleagues Mona Haar, Haley Pennington and Nalina Sombuntham.

THE COURT: Thank you. Good morning.

ALL PARTIES: Good morning.

MR. PELIER: Morning, Your Honor. Ready to please the Court. Robert Pelier on behalf of Dennis Dopico. Mr. Dopico is present.

THE COURT: Good morning.

Good morning, Mr. Dopico.

MR. DOPICO: Morning.

THE COURT: And from Probation?

MS. PITTMAN: Good morning, Your Honor. Ashley Pittman.

THE COURT: Good morning.

All right. We continue the sentencing hearing. I'll

hear from the parties. From the Government, please.

MR. BERNHARDT: Your Honor, before turning to the condition of supervision, the Court contemplated in the last hearing, the Government would like to reiterate that we are -- the parties have agreed on the total offense level and the Government is seeking a total of eight months' imprisonment.

As discussed in the last hearing, the Government's priority is restitution for the victims, whether that is here or in the civil context. So the Government defers to the Court on the fine. I am prepared to address the provision discussed in the last hearing.

THE COURT: Yes, please.

MR. BERNHARDT: But turning to the inquiry as to whether the Court may order as a condition of supervision, the Defendant cooperated in the related private civil -- civil litigation which he's a Defendant, the Court may add a condition like the following: In X civil case the Defendant shall comply with his obligations under the Federal Rules of Civil Procedure and local court rules including being truthful in his testimony. Doing so would allow the Court the ability to revoke the Defendant in addition to imposing civil sanctions. Anything broader than that term or more ambiguous than that term runs the risk of a strict scrutiny.

THE COURT: Well, not more ambiguous but more precise.

MR. BERNHARDT: More precise could run -- so what

**would the Court have in mind in terms of more precise language, Your Honor?**

**THE COURT: To admit culpability, which is what he's done here.**

**MR. BERNHARDT: Yes, Your Honor. So --**

**THE COURT: Where the request for admission or the interrogatory or the question at deposition to be answered truthfully would require an admission, right?**

**MR. BERNHARDT: Yes, Your Honor. That is true but courts -- Your Honor, there may be other state laws, for example, at which constitute -- of which -- for which the Defendant still has constitutional rights, his Fifth Amendment, that a more narrowly tailored order runs the risk of implicating.**

**THE COURT: Give me an example.**

**MR. BERNHARDT: So, for example, in -- a federal judge cannot order cooperation in a civil proceeding where the defendant still faces criminal liability because that would infringe on his Fifth Amendment rights. I can cite *In Re: Vitamins Antitrust Litigation*, 120 F.Supp.2- --**

**THE COURT: I didn't get the case name, neither did my court reporter.**

**MR. BERNHARDT: *In Re: Vitamins Antitrust Litigation*.**

**THE COURT: Thank you.**

**MR. BERNHARDT: Would you like the case citation, Your**

Honor?

THE COURT: Yes, please.

MR. BERNHARDT: 120 F.Supp.2d (D.D.C. 2000). Like here in that case, there was an executive who pled guilty to a criminal antitrust violation and in the follow on civil litigation, he invoked his Fifth Amendment right during a deposition. The plaintiffs moved to compel his testimony and the Court found that if the executive was compelled to answer questions in the deposition, then he could possibly face criminal charges. And I will note for the Court that Florida has criminal antitrust statutes.

THE COURT: All right. Good points. Thank you very much.

Mr. Pelier?

MR. PELIER: Yes, good morning, once again, Your Honor.

THE COURT: Good morning.

MR. PELIER: Pleasure to be before you. Your Honor, if you will allow me, I'd like to work backwards. I'd like to address that situation and -- and then supplement what we have previously filed and argued to the Court.

I would say it this way, Your Honor. Certainly the Court has broad discretion to impose certain conditions of probation and I would say that the case law authority is fact-driven.

And so I would agree with the Government that this case, the *In Re: Vitamins Antitrust Litigation* cited at 120 F.Supp.2d 58 is comparable to the factual scenario here. And if I may, Your Honor, for context, you -- you may recall that the plea agreement that was negotiated with the Defense has a very, I'll say, specific time window as it pertains to Mr. Dopico's activity.

The civil case that is before Your Honor is broader than that insofar as the time window that it concerns. Additionally, there is Florida Statute 542, which is the pertinent statute that relates to antitrust activities, and there is nothing contained in the plea agreement or in anything that's been negotiated with the Federal Government that addresses the potential for state incrimination.

However, what I would like to add, Your Honor, because I remember it resonated when you used the word obfuscation or obstruction at the last hearing. And I think it was verbatim and I understand the spirit of what the Court was trying to communicate. And I will say this, to use the old adage, that past is prologue, I will point out the following: Mr. Dopico cooperated and was transparent with the Government before he was indicted. Mr. Dopico cooperated with the Government and provided information after the initial investigative subpoena.

THE COURT: He -- just to -- I'm sorry to interrupt you, but he's here by information, right?

MR. PELIER: Correct. And so --

THE COURT: You mentioned indictment, so.

MR. PELIER: I just -- and my apologies.

THE COURT: No, that's all right.

MR. PELIER: I misstated. The charging instrument was by information.

THE COURT: Right.

MR. PELIER: And my point is that Mr. Dopico has been cooperative and transparent before the Information was filed, he was cooperative after the Information was filed, he was cooperative before the change of plea, he was cooperative after the change of plea. In fact, I will advise the Court that as recently as last week, he has been cooperating with his obligations under the plea agreement. And you might say to me, Well, Mr. Pelier, you know, he's obligated to do that.

Certainly he is obligated to do that, but if you look at the trajectory of what he has done in this case, it is not suggestive nor does it forbode a obfuscation or obstructive type of conduct as it pertains to the civil case. When we were here last, I recognized that the case, the -- the pending civil cases before Your Honor, you mentioned that to me, and you highlighted that I too participated in the defense of Mr. Dopico in the civil case albeit not as the counsel.

In fact, Mr. Billbrough, who is the lead counsel that I identified at that session is here today should the Court

need to inquire. But I will say this, that even in the civil case, there's been an ongoing active participation in the civil discovery process within the parameters, of course, that are permissible within the rules of civil procedure and Fifth Amendment protections and things of that nature.

So what I am trying to communicate to the Court is is that this is not a situation whereby Mr. Dopico intends nor has suggested through his conduct that he is going to be the source of an unnecessary delay or unnecessary obstruction or anything that would impede the true administration of justice within the criminal proceedings and within the civil proceedings.

And so that is consistent with the general spirit and tenor of my sentencing memo, which, if I may transition into that aspect, Your Honor, indicates that Mr. Dopico has led a life which I would say is exemplary. But for this particular misstep, I tried providing context to the Court in my sentencing memo that Mr. Dopico is a product of a family business wherein he became involved in this business through his immediate family and his uncles and aunts and this is just the way business was done.

As soon as he recognized or it was brought to his attention that any activities or anything that he had done was contrary to the law, he owned up to it and was accountable and remains disposed to be accountable throughout these entire proceedings.

I have provided the Court a pretty broad cross section of the community that attests -- certainly it is easy for me as the Defense attorney to come and say that, Your Honor, it's another thing with -- with the -- I'll say the stigma that is a consequence of criminal charges to have civilians put pen to paper attesting to the character and the content of that character in a federal criminal proceeding. And you've heard from members of the legal community, you've heard from members of the academic community, you've heard from members in the seafood industry that have attested to the content of Mr. Dopico's character.

I will also add, Your Honor, that usually the way that you commit to raising your children is indicative of the kind of moral fiber and content of character, and I have highlighted in my sentencing memo how Mr. and Mrs. Dopico have dedicated their lives to ensuring that their children pursue and have successfully obtained degrees of higher learning with notable and noteworthy local community schools at the elementary school level, high school level and in the college and postgraduate level.

I think that if you look at the totality of this man's circumstances, what he's done, how he's worked and, Your Honor, I understand that there are some jobs that may be more difficult but in the seafood industry, weighing, cleaning packaging crabs is not an easy job. It's certainly not white

**collar. And at his level, which we've provided the description, at -- at his level and D&D's level, was one that he was certainly not the smallest player but he was certainly not the biggest player in that industry.**

**And so for those reasons, Your Honor, we've -- we've filed a sentencing memo that addresses not only what I'll call the offense level calculation, particularly as it pertains to an intermediate role, but we have also sought a variance because at base offense level of 10, Mr. Dopico falls within Zone B. And Zone B gives the Court the discretion to fashion a sentence that as you've enunciated in the prior case that -- that satisfies all the criteria, but more specifically as to this case, allowing Mr. Dopico to remain at liberty will allow him to continue to participate in both the criminal proceedings and the civil proceedings as well.**

**I think it would allow him to remain as the strong partner and father that he has been throughout his life. And just to highlight a more recent filing, Your Honor, on the 16th of January, we filed a letter, a character reference letter by a gentleman by the name of Raymond McLaughlin. Mr. McLaughlin happens to be the proprietor of the Captain's Tavern, which is a local seafood restaurant as well.**

**If you peruse that letter, Your Honor, you'll see that it not only attests to Mr. Dopico's personal attributes, but rather his attributes and his conduct within the context of the**

industry itself, the seafood industry that is, Your Honor. And so for those reasons, Your Honor, we would ask the Court to impose a sentence that is not incarcerative.

And certainly if the Court determines that it will fashion some directive as it pertains to an additional condition of probation, I would respectfully ask that it be within the confines and acknowledges the parameters of what would be available to him in the face of inquiries or compulsion that exceeds the parameters of his plea agreement or what was contemplated within these proceedings vis-á-vis the plea agreement and whatever, you know, related content that has been derived therefrom.

I'd like to thank you, Your Honor, for giving me the opportunity to address not only, what I'll say is the -- the personal trajectory of Mr. Dopico but his professional trajectory as well and reviewing all of what we filed, which was pretty substantive motion for departure and/or variance.

THE COURT: Thank you very much, Mr. Pelier.

Just to clarify once more, there is no restitution in this case; is that right?

MR. BERNHARDT: Your Honor, we are asking for 90 days. There is no mandatory restitution but under 5E1.182, the Court can order restitution if the offense is not otherwise authorized. We need more time with our economist to determine whether or not they can calculate a number for restitution. At

this time, we don't even know if it is possible, but we -- we just ask the Court for 90 days.

THE COURT: Restitution hearing on Friday, April the 3rd.

MR. BERNHARDT: Your Honor, if I may, I would like to address some of the points --

THE COURT: Oh, certainly.

MR. BERNHARDT: -- Mr. Pelier made.

THE COURT: Let me just give you Friday, April 3rd at 9:30. Yes.

MR. BERNHARDT: Thank you, Your Honor. Receiving, cleaning and repacking seafood may not be an easy job but fishing for that seafood is fraught with risk and it is certainly not an easy job. And to come back and be paid less than a competitive price for your catch is not fair. Under 2R1.1, the background section, the guidelines specifically say under the guideline, prison terms for these offenders should be much more common.

It is imperative that we deter this conduct. You heard from the Defense that this is how they did business. So deterrence here where it's a learned business practice in the industry is far more important.

If we defer remand, the Defendant will be able to assist in the civil proceedings and in further criminal investigations without undermining the seriousness of the

offense.

THE COURT: Defer remand, what does that mean?

MR. BERNHARDT: If Court were -- will, or if the Court decides to order an incarcerative sentence, we ask that the Court defer the Defendant's remand to custody for 120 days to allow him time to continue to cooperate with the civil proceedings outside of the confines of prison and to continue to work with the Government.

THE COURT: Civil lawyers are here, 120 days is nothing in the schedule of that case. Trial is well beyond the 120 days anyway.

Right, Mr. Widlaski?

So a delay of 120 days, I suppose it makes the Defendant more accessible to be scheduled for deposition, I suppose, in 120 days and then -- and then not.

MR. BERNHARDT: Your Honor --

THE COURT: Let me also say, I believe here the length of probation can be up to five years.

Am I right, Officer Pittman?

MS. PITTMAN: Yes, Your Honor.

THE COURT: But any supervised release is limited to three years.

MS. PITTMAN: Yes, Your Honor.

THE COURT: All right. So if there is restitution be it here or if there is a judgment entered, and I suppose it

would be -- it could be a requirement of probation that he comply with any judgment entered in the civil case, that would not violate his Fifth Amendment privilege, would it?

MR. BERNHARDT: We do not believe so, Your Honor.

THE COURT: Right. So a five-year term of probation is far preferable than three years of supervised release following your requested eight months' incarceration, which also impacts Mr. Dopico's ability to effectively participate in the civil litigation even with a deferred remand of 120 days.

MS. SOMBUNTHAM: Your Honor, if I may.

THE COURT: Please just state your name for the court reporter. She can't see you.

MS. SOMBUNTHAM: Hi, it's AUSA Nalina Sombuntham.

THE COURT: Thank you.

MS. SOMBUNTHAM: Your Honor, I understood that the five-year probation carries the weight of additional time for compliance with a civil judgment should that be returned in that time frame. Your Honor, this particular Defendant in the conspiracy that we have alleged is a -- not the owner or the president of the company. He's affiliated, he was a vice president. This is why we had suggested that 120 days would be sufficient for the type of discovery as well as the cooperation that we are seeking in the Government's case. The documents and other information that are usually the reason that civil litigation may take longer would not necessarily be in his

custody and control as not the principal of the company.

And so we return to our original request, which is an incarcerative sentence. We think that is far more appropriate and valuable in this case that he faces an incarcerated sentence and that that is balanced with the needs of our investigation as well as the civil litigation by asking for a short period for remand so that we don't have him have the issue of being in custody and not being able to participate in the civil litigation in a meaningful way.

So, Your Honor, I think we want to reiterate that the Government's recommended sentence of eight months' incarceration as well as restitution hearing in 90 days and the remand is trying to grapple with the different needs and goals of the different, various litigation, because, again, the Government's primary interest in this case is that the victims, the fishermen, are made whole.

And so we are interested in advancing restitution, if that is possible. And so we -- given the complexities of this area in terms of the market, this is the best proposal we have today and this is why we are again recommending that at this continued sentencing. Thank you, Your Honor.

THE COURT: Let me follow the Government though with the -- with your proposed timeline. You propose that I -- that I enter an incarcerative sentence, right?

MS. SOMBUNTHAM: Yes, Your Honor.

THE COURT: That the Defendant be ordered to surrender at the end of May to begin serving that eight-month term. And the trial in this case is in November, in the civil case involving Mr. Dopico. So presumably, he would be incarcerated unless he gets out, I suppose, for a good time before November, but not be available to his counsel meaningfully for six to eight months before the trial, right?

MS. SOMBUNTHAM: Your Honor --

THE COURT: And then your primary interest is restitution to the victims. So my question to the Government is, what are you doing with regard to the other named defendants in the corresponding civil case? What are you doing with Mr. Brian Hershey, with Gary Graves, those are other named defendants, individuals --

MS. SOMBUNTHAM: Your Honor --

THE COURT: -- if anything.

MS. SOMBUNTHAM: Your Honor, at this time we have an ongoing investigation and we have not necessarily -- the other subjects and targets are not public, so we are not at liberty to disclose.

THE COURT: All right.

MS. SOMBUNTHAM: But that being said, I -- this is a balance issue. I understand that the -- that this may not allow the Defendant to be as accessible in some ways, there -- but more primarily, we had contemplated and Defense counsel

and, I think, civil litigation counsel given his position in the company, that a lot of what he would be primarily concerned with would not necessarily be document production, it would be his availability if he was designated in South Florida, he could still be available. And so there would be enough time to make those arrangements asking for a short remand.

We would -- we would be open to additional time for where he can report. We were just mindful that the Court, after imposing a sentence, would want him to be in custody. And so we asked for the 120 days not to ask for too lengthy of a time but with enough appropriate delay so that we could have more information about what type of -- what type of cooperation he may need to do or what type of compliance he may have with the discovery and maybe revisit at that time given the Court's trial date in the parallel civil litigation -- or the -- or not parallel, the private civil litigation in November, the trial date.

THE COURT: Thank you.

Mr. Pelier, anything additional?

MR. PELIER: Your Honor, I want to highlight a few things and -- and respectfully supplement or correct the description and the impression that the Government is seeking to give Your Honor regarding Mr. Dopico and D&D Seafood.

I know that I have set forth the origins and the history of the business, I will, with the Court's permission

and indulgence, I will re-emphasize that D&D Seafood is a three-man operation. It is a family business. The reason why Mr. Dopico was selected and not the corporate representative of D&D Seafood is because you are looking at him. He is the operations person for D&D Seafood. His brother helps with administrative matters and the other family member helps in transporting and cleaning but the proposition that D&D Seafood had this -- or has this corporate structure and that Mr. Dopico is not vital to understanding the operations is just not borne out by the corporate existence that has been in place for decades.

I also want to highlight that certainly it's ultimately up to the Court to determine, to fashion a sentence, but Mr. Dopico lives locally. He -- he has maintained excellent responsive communication with his counsel, both on the criminal side and on the civil side, and I do not believe that there would be any modification or change in that regard.

As I said, he has a long-time marriage, they both live together, although his kids are grown and live outside of the city. He has great ties to the community. This is all he knows, this is where he lives, this is home, this is his community. So all those factors contribute and are indicia of his ability to maintain a consistent and ongoing communication both on the criminal side and on the civil side.

I might add one other thing, Your Honor. You asked a

pointed question and I understand why the Government couldn't answer because there's an active investigation, but what I do know is that in the course of the Government's investigation, even before they came to Mr. Dopico, there have been search warrants and, I will say, a myriad of investigative tactics and mechanics, methodologies that had been implemented to the other individuals named in the civil case.

And Mr. Dopico's response and his reaction and his, I will say, behavior after that, clearly delineates his approach, his way of approaching this as opposed to anyone else that may become a defendant at a later point in time. I say that because it's -- it's worth noting and it's consistent. It's not just a matter of convenience but rather supports the assertion that I've made in the sentencing memo that once Mr. Dopico recognized, brought to his attention, realized that what had been happening was inconsistent with what would be the law, he has owned up to it.

So in his 50-some-odd years of life, he's -- the only thing he had was a undersized grouper ticket 20-something years ago that I've highlighted in the sentencing memo. He's led an absolutely clean and exemplary life, Your Honor. And so for those reasons, I reassert, I remake all the arguments that I've set forth in writing and I've set forth in the last sentencing hearing so that the Court would impose a non-incarcerative sentence.

MR. BERNHARDT: Your Honor.

THE COURT: Yes.

MR. BERNHARDT: David Bernhardt again for the Government. If the Defendant had such a big role, that is all the more reason for an -- to order an incarcerative sentence for future deterrence of defendants who are owner-operators or just operators or just employees of other companies. It is a three-man operation but they bought $8 million worth of seafood in three years.

And, Your Honor, we -- the Government suggest deferring remand until after the trial if the Court's concerned with his availability for the civil trial, given the speed of the civil docket, that would balance the needs of the Defendant's cooperation with both the civil and the criminal trial and there could be credit for substantial assistance if not warranted at this time.

THE COURT: Thank you very much.

Mr. Dopico, is there anything you would like to say, sir, before I announce your sentence?

MR. PELIER: Your Honor, he has -- and I think Probation has recognized, Ms. Pittman has, that he has authored --

THE COURT: Yes.

MR. PELIER: -- an acceptance of responsibility letter.

THE COURT: I just need to make clear on this record that he's being offered the opportunity to allocute and he's either allocuting or not because otherwise I can be reversed, Mr. Pelier.

MR. PELIER: Thank you, Your Honor.

THE COURT: Sure.

THE DEFENDANT: Yes, Your Honor, I stand by and reiterate the acceptance of the situation.

THE COURT: Thank you, Mr. Dopico.

So to repeat what's been said before under the advisory guidelines, you find yourself at an Offense Level 10, Criminal History Category 1, that places you in Zone B. The advisory guidelines recommend a sentence of 6 to 12 months' imprisonment.

Your attorney, Mr. Pelier, has filed a sentencing memorandum and motion for downward departure or variance, Docket Entry 17, requesting a non-incarcerative sentence. The Government, as you've heard several times, is requesting that I sentence you to an eight-month term of imprisonment.

After considering the advisory guidelines, I turn to the factors in 18 U.S. Code, Section 3553. I note your history and characteristics, Mr. Dopico, but for your conduct in this case, conduct in large part resulting from custom, habit, method of doing business, what it was you stepped into, you have led a law-abiding life.

I note the nature and circumstances of your offense conduct, serious conduct indeed, that it has certainly caused damage to the many Plaintiffs who are suing you in the civil case, counsel of -- for whom sit behind you today in open court. So the conduct is serious. There is certainly the need for the sentence to promote respect for the law and serve to deter you as well as others and there is the need to avoid unwarranted sentencing disparity. Here, I have no one to compare you to. You are the only one who has come forward, who has acknowledged responsibility early on, has waived indictment, has cooperated with the Government.

So what is the appropriate sentence? I need to sentence you to something sufficient but not greater than necessary to achieve all of these objectives in sentencing. I mentioned earlier and I note again, that a probationary sentence allows me to have you under Court supervision for five years. The imprisonment sentence the Government is requesting does not, because it on allows me to have you under supervision for three years.

The Government has indicated several times its primary interest is to see that the victims are compensated, that restitution is paid. I think that objective is best achieved by a non-incarcerative sentence which, again, Zone B allows for. Given my assessment of all of these 3553 factors, Mr. Dopico, it is the judgment of the Court that you are placed

on probation for a term of five years.

The case is set for restitution hearing, again, on April 3rd. If restitution is determined in this case, you will pay restitution at the rate of 15 percent of your monthly gross earnings until the Court alters that payment schedule in the interest of justice.

The U.S. Bureau -- the U.S. Probation office and U.S. Attorney's Office will monitor your payment of restitution and report to the Court any material change in your ability to pay. Your payments do not preclude the Government from using any other anticipated or unexpected financial gains, assets or income to satisfy your restitution obligations. Restitution would be made payable to the Clerk of the U.S. Courts and in turn would be forwarded to the victims.

You will comply with all of the general conditions of probation including the following special conditions: You will serve eight months of house arrest on an electronic monitor. You will pay the cost of an electronic monitor. You are allowed to leave your home only for work purposes, for meetings with your lawyer and for any medical appointments you might have as approved by your probation officer.

You are to perform 100 hours of community service. I will not impose a fine given the overriding interest in paying restitution to the victims, but you must pay a special assessment of $100.

Another special condition of probation is that you may not leave the Southern District of Florida until all restitution is paid in full.

Finally, you will comply with your obligations in the civil case, including the Federal Rules of Civil Procedure and local court rules. And you must be truthful in all of your testimony as well as written submissions.

Now that sentence has been imposed, does the Defendant or his attorney object to the Court's findings or the manner in which the sentence was announced?

MR. PELIER: No, Your Honor.

THE COURT: Mr. Dopico, you have the right to appeal the sentence. Any notice of appeal must be filed within 14 days after entry of the judgment. If you are unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.

In this respect, I am granting the Defendant's motion for a downward variance.

Is there anything additional?

MR. BERNHARDT: No, Your Honor. Thank you.

MR. PELIER: No, Your Honor. Thank you very much.

THE COURT: Good luck to you, Mr. Dopico.

And you all have a good day.

MS. SOMBUNTHAM: Thank you, Your Honor.

ALL PARTIES: Thank you, Your Honor.

THE COURT: Passport may be returned to the Defendant. Thank you.

(The proceedings concluded at 10:21 a.m.)

**C E R T I F I C A T E**

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

_03/18/2026_
DATE

STEPHANIE A. McCARN, RPR
Official United States Court Reporter
400 North Miami Avenue,
13th Floor
Miami, Florida 33128
(305) 523-5518